GEORGE H. LEONARD & CO., to Use of MARDEN, ORTH & HASTINGS, v. ROLLER.

(Circuit Court of Appeals, Fourth Circuit. December 21, 1912.)

No. 1,119.

EVIDENCE (§ 417*)—SALES—TIME FOR PERFORMANCE.

Defendant contracted to make and sell to plaintiffs, who were dealers, 5,000 barrels of tanning extract, to be delivered at fairly regular intervals during a year. After 10 months, defendant having delivered but about 1,000 barrels, a new contract was made, extending the time, and by which defendant agreed to report weekly the quantity on hand, to enable plaintiffs to order accordingly. He failed to keep such agreement, and after the lapse of 14 months more, during which defendant delivered but 49 barrels, plaintiffs demanded the greater part of the remainder called for, and, when it was not delivered, sued for breach of the contract. The second contract did not in terms fix any time when it should expire. Held, that the court could not say as matter of law that it expired at the end of a year, but that plaintiffs were entitled to show, by the circumstances and conduct of the parties, that it had not expired when they made their demand, and, if such fact was proved, to show the damages they sustained by its breach.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1874–1899; Dec. Dig. § 417.*]

In Error to the District Court of the United States for the Western District of Virginia, at Harrisonburg; Henry C. McDowell, Judge.

Action at law by George H. Leonard & Co., to the use of Marden, Orth & Hastings, against John E. Roller, trading as the Excelsior Oak Extract Company. Judgment for defendant, and plaintiffs bring error. Reversed.

R. T. Barton, of Winchester, Va., for plaintiffs in error.

Rudolph Bumgardner, of Staunton, Va. (Bumgardner & Bumgardner, of Staunton, Va., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and ROSE, District Judges.

ROSE, District Judge. This is a suit for a breach of a contract to make, sell, and deliver tanning extract. The plaintiffs in error were plaintiffs below. They were the buyers. They will be referred to as such. They are all citizens of Massachusetts. The defendant below is defendant in error here.' He is a citizen of Virginia. He was the seller. He will be so designated. He is a manufacturer of tanning extracts. The buyers were dealers in such commodities. They contracted with producers to take large quantities of their output at more or less frequent intervals, extending sometimes over considerable periods, as, for example, a year. They sought purchasers for what they had agreed to buy. If they found those who took what they had bought, when and as they were able to deliver it, and who would pay them a higher price than they had bound themselves to give, they made money. If they did not, they lost. To save cost of transshipment, they caused the extracts to be shipped directly from the factory of production to those who had purchased from them. This method of doing business necessarily resulted in their agreeing to deliver what at the time was not in their possession. If the producers carried out their bargains with them, they were safe. If the reverse happened, they might find themselves under serious liability.

The declaration in this case says that the method of doing business above described was in contemplation of both the buyers and the seller at the time they entered into contractual relations with each other. For present purposes this allegation must be assumed to be true. The first agreement between them bore date September 12, 1904. The contract then made was in writing. By its terms the seller sold and the buyers bought an aggregate of 5,000 barrels of extract f. o. b. cars, Broadway, Va. Shipments to fill the contract were to be made at fairly regular intervals between September 15, 1904, and September 15, 1905, as buyers might from time to time order. Up to the 22d of July, 1905, the seller had shipped only 1,026 barrels, and 3,974 had not been delivered. On the last-mentioned date the parties made a new contract. It took the form of an agreement proposed by the seller and accepted by the buyers. The seller stated that he entered into it in consideration of his having failed to make delivery under his contract of September 12, 1904, according to its terms, and in consideration of the buyers giving him further time to fulfill it. The seller undertook to report to the buyers each Wednesday the approximate quantity of wood bark, extract, and tank cars on hand, the estimated quantity of extract which he would make in the next week, and the shipments of extract made since the preceding report. He was to make shipments as instructed by the buyers as rapidly as possible until the balance of the 5,000 barrels were delivered. He was to ship to nobody else, except one concern, and not to it unless there was extract due it on a contract made prior to the date of his original agreement with the buyers, viz., September 12, 1904.

As the case is now before us, it must be assumed that the seller broke his contract as to almost all of the 3,974 barrels which he was to ship as directed by the buyers. He shipped 49, and 3,925 are still undelivered. He never made a single weekly report called for in the

contract. The course the case took below rendered it unnecessary for him to explain, excuse, or justify these apparent breaches of contract. The buyers charged, in one or the other of the counts of their declaration, that on various dates, ranging from September 15, 1905, to September 12, 1906, they had by letters, telegrams, and personal interviews urged the seller to carry out his contract, by reporting the quantities of material as therein provided for, and by shipping the extract to the persons and places to which the buyers had directed. They assert that they could not, without such reports, safely sell the extract to be obtained from him, and as a consequence could not give him orders for shipment. In some instances they say that they refused profitable orders for the kind and quality of extract he was to deliver to them. In other cases they bought extract to fill such orders at a higher price than that they agreed to pay him. They further charged that he broke his contract by selling and delivering extract to other persons.

For the present purposes it may be assumed that the buyers properly charged the making of the contract between them and the seller and its breach by the latter. Below the dispute between them was primarily as to the measure of damages to which the buyers were entitled, and secondarily as to the manner in which such damages were to be proved.

Before discussing these questions it may be said that in August, 1905, the buyers gave the seller an order for a car load, or 60 barrels, of extract. This order was not filled by him. It is agreed that this failure damaged the buyers to the amount of $119.58. This sum the seller paid into the court below. The buyers may have it whenever they are ready to take it.

The pending controversies between the parties concern the remaining 3,865 barrels. The buyers say that their failure to obtain these from the seller has cost them $9,846.78. The learned judge below refused to allow them to offer any evidence to show that they had in fact suffered this loss, or any part of it.

In the declaration it is alleged that on the 18th and 19th of September, 1906, the buyers ordered the seller to deliver the major part of these 3,865 barrels, and it is also charged that they could and would have sold the remainder if they could have obtained them. They claimed to recover the difference between the price which, under their contract, they were to pay the seller and (1) the price at which they had to buy extract to fill the orders which, on September 18 and 19, 1906, they had given him, and (2) the price at which they could have sold the remainder in September, 1906. It will be noted that the date on which these large orders were given by the buyers to the seller was nearly 14 months subsequent to the making of the contract of July 22, 1905. It was, however, only 6 or 7 days after the declaration alleges that the buyers in a personal appeal made their last attempt to induce the seller to carry out his contract.

The demurrer of the seller to the amended declaration was overruled. The learned judge below was, however, of opinion that the seller was entitled to be informed by a bill of particulars in detail pre-

cisely what damages the buyers proposed to prove they had suffered and in what manner such damage had been occasioned. The buyers thereupon filed a bill of particulars. In it they said that they intended to prove the loss they had suffered by the failure of the seller to comply with their orders of September 18 and 19, 1906, so far as such orders had been given, and to show the difference between the contract price and the market price prevailing in September, 1906, so far as concerned that portion of the extract for which they had not given the seller any orders. The learned judge below was of opinion that by a fair construction of the contract of July 22, 1905, the buyers were bound to order, and the seller bound to deliver, the extract in fairly regular quantities. He held that the failure of the seller to make the weekly reports called for by his contract relieved the buyers of any obligation to give orders, but that such failure did not of itself extend the time for the performance of the contract. He ruled that such time expired not later than July, 1906. He reached this conclusion by assuming that the contract of July, 1905, called for substantially the same rate of delivery as that of September 12, 1904, which was 5,000 barrels in 12 months, or 416⅔ barrels per month. He said the 3,974 barrels which were undelivered when the contract of July 22, 1905, was made, should at this rate have been delivered in 9.53 months—that is to say, by some time early in May of 1906—and that it could not be assumed that the parties had contemplated that the time of such delivery would extend beyond July, 1906. He thereupon notified the counsel for the buyers and the seller that at the trial he would not allow the former to offer evidence in support of any of the items of damage alleged in such bill of particulars. He said that under the declaration the buyers might be entitled to present evidence of other damage suffered by them. He added, however, that such evidence, if offered at the trial, would constitute a complete surprise to the seller, unless the latter was notified in advance that it would be so presented. He therefore ordered that the buyers, if they wished to prove other damage, should file a new bill of particulars. His letter to the counsel is in the record as one of the orders in the case. It closes by stating:

"I anticipate that no bill of particulars will be filed under the order of to-day. If so, the result will merely be that no evidence * * * can be received in behalf of plaintiffs, on the theory that my construction of the second contract will be accepted as a dernier resort."

No other bill of particulars was tendered by the buyers. It followed that under the rulings of the court there was nothing to try. All that remained to be done was to make the necessary formal arrangements for seeking here to review by writ of error the accuracy of the rulings below. The parties stipulated to waive a jury trial and to submit the case to the judge. The buyers made formal tender of evidence to support their declaration and to prove the items of damage alleged in their bill of particulars. In accordance with the ruling previously made, the latter evidence was rejected. Exception was taken. The case is here.

We are of opinion that upon the allegations of the declaration it was error to rule as a matter of law that the time during which the buyers could call for deliveries had necessarily expired before September 18 and 19, 1906. It is true that, had the original contract been carried out according to its terms, the seller would have delivered more than 400 barrels a month. It is equally true that in the 10⅓ months between the making of the first and the second contract he actually delivered only 1,026 barrels, or at the rate of less than 100 barrels a month, and neither party then treated the contract as at an end. No specific time of delivery was a term of the second contract. Under such circumstances, we do not see how it is possible, in advance of the actual presentation of the evidence at a trial, to say when the time for performance of the contract of July, 1905, by its terms expired, much less what effect the acts of the parties and other circumstances might have had in extending the time for its performance beyond the date assumed by the court below. The buyers should be allowed to prove, if they can, that the seller broke the contract. After so much has been shown, and the court and jury know what took place subsequent to the making of the contract of July 22, 1905, and prior to the orders of September 18 and 19, 1906, it will be possible for the court to determine what the proper measure of damages is. It hardly can be safely done before. It is not impossible that the testimony will take such a shape that, after it is in, all that the court will be able to do will be to tell the jury that if they shall find certain facts there will be one measure of damages, and if they shall find certain other facts there will be another. In order to prevent surprise to the seller, the buyers may within proper limits be required to give, in the form of a bill of particulars or otherwise, notice of all the proofs of damage which they propose to offer, whether it be upon one theory of the case or another, or upon several. From the record before us it would appear that there may have been an almost total breach by the seller of his contract, and that the buyers have been losers thereby. It would seem that the latter should have their day in court to prove what their loss has been, that it is of a kind and character for which the law will allow them to recover, and that it can be supported by evidence which the law holds competent.

It follows that the judgment below must be reversed, and the cause remanded for a new trial.

Reversed.